**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: January 21 2015

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In Re: ) | Case No.: 13-34019 |
| ) | |
| Patrick C. McLane and ) | Chapter 7 |
| Lisa M. Welsh, ) | |
| ) | Adv. Pro. No. 14-3044 |
| Debtors. ) | |
| ) | Judge John P. Gustafson |
| Patrick C. McLane and ) | |
| Lisa M. Welsh, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| Elaine Bostater, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OF DECISION

This adversary proceeding is before the court for decision after trial on Plaintiffs' ("Plaintiffs" or "Debtors") Complaint for Recovery of money/property ("Complaint"). Plaintiffs are the debtors in the underlying Chapter 7 bankruptcy case. Defendant is a former landlord of the Debtors. In their complaint, Plaintiffs allege that the Defendant garnished Plaintiffs' wages during the period immediately prior to the filing of their Chapter 7 bankruptcy. Plaintiffs seek to recover

the garnished wages, as they allege that the wages constitute a preferential transfer pursuant to 11 U.S.C. §547.

The district court has jurisdiction over Plaintiffs' underlying Chapter 7 bankruptcy case and all civil proceedings in it arising under or related to a case under Title 11, including this adversary proceeding. 28 U.S.C. §1334(a) and (b). The Chapter 7 case and all proceedings in it arising under or related to a case under Title 11, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. §157(a) and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio. Proceedings to recover preferences and to determine the dischargeability of particular debts are core proceedings that this court may hear and determine under 28 U.S.C. §157(b)(1) and (b)(2)(F) and (b)(2)(I).

This memorandum of decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Plaintiffs are entitled to judgment on the complaint.

## FINDINGS OF FACT

The pertinent facts in this case are fairly straightforward. On January 9, 2011, Plaintiffs entered into a month-to-month lease agreement with Defendant for the house and surrounding yard located at 916 Ogontz St. in Sandusky, Ohio ("the property"). [Def. Ex. A]. Defendant was both the landlord and the owner of the property. On or about December 9, 2012, Plaintiffs moved out of the property. Upon an examination of the property following the Plaintiffs' departure, Defendant found damage done to the house and yard that she claimed did not exist prior to the Plaintiffs having resided there. The damage included, but was not limited to, water damage to bathroom wallpaper

and backsplash, fence and post replacement, broken and/or missing blinds, broken screens, broken vents, and clogged drains. Based upon this damage to the property, Defendant filed a complaint against the Debtors in the Municipal Court of Sandusky, Ohio, Small Claims Division. Defendant obtained a default judgment against the Debtors on April 4, 2013 in the amount of $2,974.68, plus interest at the statutory rate.

To collect on this judgment, the Defendant commenced garnishment of the wages of the Debtor Patrick C. McLane. Starting on July 29, 2013, for a total of five bi-weekly pay periods (with the last pay period ending on October 6, 2013) Debtor's pay stubs reflected that wages were sent to the Municipal Court of Sandusky in the amounts of $579.77, $564.34, $462.48, $463.23, and $460.77. [Doc. # 1-6, Exhibit E].

On September 27, 2013, Debtors filed their Chapter 7 case. [Case No. 13-34019[1], Doc. # 1]. Defendant was listed on Schedule F as an unsecured creditor, in the amount of $3,168.68. [*Id.*] Despite notice of the filing of Plaintiffs' Chapter 7 bankruptcy, Defendant did not file a timely objection to discharge or the dischargeability of her debt. On March 19, 2014, the order of discharge was entered by the court. [*Id.* at Doc. # 29].

Plaintiffs filed the above captioned adversary case on April 16, 2014 [Doc. # 1]. Subsequently, on August 18, 2014, Plaintiffs filed Amended Schedules B, C and Summary of Schedules. On the Amended Schedules B and C, Plaintiffs listed "Garnishment from Wages" in the amount of $3,530.59 as both personal property and property claimed as exempt. [Case No. 13-34019, Doc. # 44]. A review of the docket shows that the Chapter 7 Trustee made no attempt to

---

[1]/ The court takes judicial notice of the contents of its case docket and the Debtors' schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n. 2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. V. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

recover[2] the alleged preference (the garnished wages) as property of the bankruptcy estate.

## LAW AND ANALYSIS

In their Complaint, Plaintiffs seek to recover a transfer of the garnished wages ("the Transfers") made to the Defendant, in the time period beginning on July 29, 2013 and ending on September 27, 2013, in the total amount of $2,530.59, as preferential transfers under 11 U.S.C. §547. Specifically, Section 547(b) provides as follows:

> (b) Except as provided in subsection (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made–
> (A) on or within 90 days before the date of the filing of the petition; . . .
> (5) that enables such creditor to receive more than such creditor would receive if–
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The evidence in this case shows that Defendant was, at the time of the Transfers, a creditor of the Plaintiffs and that the Transfers were of an interest of the Plaintiffs in property. During the period that the Transfers took place, there was an antecedent debt that Plaintiffs owed the Defendant by virtue of the default judgment granted in favor of Defendant. [Def. Ex. XXXX]. Therefore, the evidence shows that the Transfers were made as a partial payment of an antecedent debt owed by the Plaintiffs, and that they were made within ninety days before September 27, 2013, the date

---

[2]/ This is not surprising. The transfers at issue here were wage garnishments, and therefore were not voluntary transfers. *See*, §522(g)(1) (allowing debtors to claim an exemption in property recovered by a trustee if the transfer was not voluntary, and was not concealed). Chapter 7 trustees do not generally pursue preferences where a debtor can exempt the funds that the Chapter 7 trustee may recover.

14-03044-jpg    Doc 39    FILED 01/21/15    ENTERED 01/21/15 16:11:00    Page 4 of 11

Plaintiffs' Chapter 7 bankruptcy petition was filed.

Although "insolvency" is one of the elements that Plaintiffs must prove, there is a statutory presumption of insolvency during the ninety days immediately preceding the filing of a bankruptcy. *See*, 11 U.S.C. §547(f). Defendant offers no evidence to rebut that statutory presumption. *See In re Oakes*, 7 F.3d 234 (Table), 1993 WL 339725, *2 (6th Cir. Sept. 3, 1993) (citing *In re Sierra Steel, Inc.,* 96 B.R. 275, 277 (B.A.P. 9th Cir. 1989) and explaining that the presumption vanishes only after transferee comes forward with substantial evidence of solvency). Thus, the court finds, based upon the unrebutted statutory presumption, that the Transfers were made while Plaintiffs were insolvent.

Finally, a Trustee's Report of No Distribution was entered in the main case on November 13, 2013. [Doc. #10]. Because Debtors' Chapter 7 case is a "no asset" case, with no distribution to general unsecured creditors, Defendant received more from the garnishments than she would have received had the Transfers not been made and, instead, received payment of the debt to the extent provided by the Bankruptcy Code. The amount the Defendant would have received, absent the pre-petition garnishments, would have been zero in this Chapter 7 case. Therefore, the prepetition wage garnishments allowed Defendant to receive more than she would have received in this chapter 7 case if the Transfers had not been made and if Defendant-creditor had received payment of her debt to the extent provided by the provisions of Title 11. Thus, all the requirements for finding the wage garnishments to be preferential transfers under §547(b) have been satisfied.

As previously noted, it is not the Chapter 7 Trustee attempting to recover the Transfers as preferences, but rather, the Debtors. Section 522(h) provides as follows:

> The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer if -
> (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
> (2) the trustee does not attempt to avoid such transfer.

5

Here, the Debtors' claim of exemption in the funds in issue has been allowed by operation of law.  *See*, Case No. 13-34019, Doc. # 44, Schedule C (claiming an exemption of $3,530.59); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–644, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).  In addition, this is a case where the Transfers could have been avoided by the Chapter 7 Trustee pursuant to his powers under §547, and the Trustee did not attempt to avoid such transfers.  Thus, the court finds that the Plaintiffs have standing to bring this Complaint.

At trial, Defendant did not offer any evidence to rebut Plaintiffs' proof regarding the existence of all of the elements required to find the Transfers to be preferential under §547(b). Instead, Defendant argued that the because the damages done by the Plaintiffs to the property was "willful and malicious", the debt owed to the Defendant is nondischargeable under 11 U.S.C. §523(a)(6).  Defendant argued that because the judgment for the damage done to the property should be excepted from discharge, she should not have to return the monies to Plaintiffs that she received from the garnishment Mr. McLane's wages.

This argument is not well-taken for several reasons.  First, "non-dischargeability" is not one of the applicable statutory affirmative defenses to avoidance in preferential transfer actions.  *See,* 11 U.S.C. §547(c)(1)-(8).  Section 547(g) states that when a plaintiff has met his or her burden of proving all five of the elements making a transfer avoidable under § 547(b), the defendant against whom recovery is sought has the burden of proving that the transfer in question is not avoidable under one of the affirmative defenses set forth in §547(c).  Defendant's first problem is that courts have held that "§547(c) is the exclusive list of defenses available to preferential transfers".  *In re Furr's Supermarkets, Inc.*, 320 B.R. 1, 6 (Bankr. D.N.M. 2004)(rejecting recoupment as a preference defense); *see also*, *In re Vission, Inc.*, 400 B.R. 215, 221 (Bankr. E.D. Wis. 2008)("Equitable or 'fairness' defenses to preference actions, such as the one argued by [defendant], are not recognized by the courts."); *In re Tyler*, 379 B.R. 707, 711 (Bankr. W.D. Mich. 2007)("[the] court is not

6

authorized, nor should it be, to create equitable defenses to recovery of avoidable transfers. Any defenses are limited to the statutory language."). This court does not need to conclude that there are no circumstances under which a non-547(c) defense could ever be recognized[3] - it is sufficient to note that the creation of such non-statutory defenses to preferences are, at a minimum, strongly disfavored.

Looking at the language of §547(c), Congress created a statutory exception to preference avoidance for certain types of debts. However, wage garnishments are not one of the types of debts excluded under §547(c). *See,* 11 U.S.C. § 547(c)(7) ("The trustee may not avoid ... a transfer ... to the extent such transfer was a bona fide payment of ... debt to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement [or] divorce decree....").

At trial, Defendant attempted to assert as a defense to the avoidance of the Transfers, that the debt owed to her by Plaintiffs is nondischargeable. She identified numerous pictures of the damage done to her house while the Plaintiffs resided there, and she submitted the many pictures into evidence, attempting to prove that the debt should be nondischargeable, and thus, the Transfers should not be recoverable. "However, the dischargeability of a debt has no bearing on whether a transfer in payment of such debt was preferential under § 547(b)." *In re Gamma Ctr., Inc.,* 2012 WL 4435117 at * 2 n.3, 2012 Bankr. LEXIS 4453 at *8 n.3 (Bankr. N.D. Ohio Sept. 24, 2012); *see also*, *In re Tyler*, 379 B.R. 707 (Bankr. W.D. Mich. 2007)(rejecting preference defense based upon underlying restitution debt being non-dischargeable).

An additional reason to reject this defense is that the claim that the debt is nondischargeable

---

[3]/ Clearly, there are other requirements, not found in §547(b) that must be met - a proper party plaintiff, the complaint must have been filed within the statutory time period, the adequacy of notice, etc. The cases that discuss the "exclusive" nature of the statutory exceptions found in §547(c) do not preclude a defendant from raising those issues.

under Section 523(a)(6) based upon it being a "willful and malicious injury" is time barred. Federal Rule of Bankruptcy Procedure 4007(c) mandates that a complaint to determine the dischargeability of a debt under 523(c) "shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Under § 523(c), certain types of debts, including those arising from a "willful and malicious injury", are automatically discharged unless a creditor files a complaint to determine the dischargeability of that debt. *See, In re Sieger*, 360 B.R. 653 (Bankr. N.D. Ohio 2007). Here, Defendant had notice of Plaintiffs' bankruptcy filing, as she was properly listed as an unsecured creditor in Debtors' Schedules. In order for the court to hold the underlying debt to be nondischargeable, a complaint would have had to have been filed by January 13, 2014, sixty days after the first date set for the First Meeting of Creditors under Section 341. No complaint was filed, and a time-barred clam of nondischargeability under §523(a)(6) is not an effective defense to a preference action.

Morever, the evidence presented at trial was insufficient to find that the majority of the damage to the house was the result of a "willful and malicious injury". Defendant cited a recent case from this district, *In re Logan*, 2014 WL 1304604, at *2 (Bankr. N.D. Ohio Mar. 31, 2014), which contains the following:

> Addressing the "willful" requirement of § 523(a)(6), the Supreme Court specifically held in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id*. at 63. Rather, the Court explained that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id*. at 61–62. A willful injury occurs when "(i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 307 (B.A.P. 6th Cir.2004) *(citing Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir.1999)). Under § 523(a)(6), " 'malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Id*. (*citing Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986)).

The underlying facts in the Supreme Court decision further illustrate the problem with Defendant's case for non-dischargeability. In *Kawaauhau v. Geiger*, the debtor (Dr. Geiger) committed malpractice in the treatment of a patient that resulted in a patient having her leg amputated. The debtor-doctor did not carry malpractice insurance. Despite the reckless actions of the debtor-physician, the Supreme Court held that the malpractice judgment was dischargeable.

Here, much of the evidence presented at trial involved damage that was alleged to have been done by Debtors' children. While the argument was made that parents are responsible for their children, the leap cannot be made that the damage done by the children was a result of "willful and malicious" acts by the parents.

There was also evidence presented of damage done to the bathroom that allegedly resulted from excess humidity. The bathroom did not have a fan, so renters were instructed to leave the window open when showering. If the failure to leave the window open was the cause of the peeling wallpaper, the failure to open the window every time the debtors or their children showered simply does not rise to the level of "willful and malicious" conduct necessary for non-dischargeability under §523(a)(6).

As Plaintiffs have met their burden of proof as to the elements of §547(b) in support of their their preference action, and the Defendant has raised no valid defense to avoidance of the transfers, the only matter remaining for the court to determine is the amount of judgment to grant in favor of the Plaintiffs.

Defendant disputed the amount that Plaintiffs claimed that she had received as a result of the garnished wages. While the pay stubs contained in Doc. #1-6 support Plaintiffs' testimony that there were five total transfers, amounting to $2,530.59, Defendant testified that she only received three checks from Sandusky Municipal Court. The Defendant testified that the three checks she received were in the amounts of $355.51, $553.05, and $453.23, for a total of $1,361.85.

9

The court found the testimony of both parties to be credible on the garnishment issue. However, Plaintiffs can only recover monies that Defendant actually received. No direct evidence was presented by Plaintiffs that would contradict Defendant's testimony as to what monies she actually received.

In their complaint, Plaintiffs submitted documentation that showed a total of five garnishments, totaling $2,530.59. But at the trial, they submitted no additional evidence that supported their initial documentation. Defendant, upon refreshing her recollection by reviewing a document from the Sandusky Municipal Court website, testified that she had only received three checks from the Sandusky Municipal Court, totaling $1,361.85. The court finds Defendant's testimony credible, and uncontradicted, because Plaintiffs submitted no evidence at trial about the amounts actually received by Defendant.

It is unclear whether the difference between the amounts taken from Mr. McLane's paychecks and the amounts Defendant testified she received were because monies were frozen in the Sandusky Municipal Court upon the filing of the bankruptcy, or kept as fees by the Municipal Court, or refunded to the Debtors, or tendered to the Chapter 7 trustee. However the difference arose, based upon the evidence presented at trial, the court finds that the Plaintiffs have only met their burden of proof as to the Defendant's receipt of $1,361.85.

Based on the evidence and testimony provided at trial, the court is unable to determine where the remaining balance of the funds garnished from Plaintiffs, totaling $1,168.74, went. However, should any of the funds from the wage garnishments remain within the Sandusky Municipal Court system, perhaps frozen due to the proceedings before the court, the Plaintiffs are entitled to their return as part of this decision because the Debtors-Plaintiffs' claim of exemption in those funds has become legally binding. *See*, *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–644, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

10

## **CONCLUSION**

Having satisfied their burden under 11 U.S.C. § 547(b), Plaintiffs are entitled to judgment on their preference complaint against the Defendant in the amount of $1,361.85, the amount the court finds that the Defendant actually received. The court will enter a separate judgment in accordance with this Memorandum of Decision.